May it please the Court, Michael Kodner on behalf of consolidated petitioners for this matter Mario Rivera-Baltazar and Alberto Mendez-Garcia. I would reserve one minute respectfully for rebuttal. The entire reason behind the cancellation statute under 1229B is to relieve what I would consider the hardships of removal in specific cases where removal essentially seems like an excessive penalty. I think as recognized by the Supreme Court recently in Holder versus Martinez, a 2012 case, the statute's purpose is to take individuals who technically are removable otherwise have strong ties and family unity and give them essentially a statutory break. I would submit that these overtones in terms of the purpose behind the 1229B statute are important when analyzing both of these petitions in general because both petitioners do have or did have the sufficient time in the United States and did have strong ties the United States in terms of the equities which I will go over momentarily. I think the the overlying theme is is that both of these cases place them within the general purpose of the of the cancellation statute. Now I would be remiss not to begin with the Chevron deference issue in terms of the board's essentially identical decisions here when relying on Isidro Zamorano. In starting and I think in determining the actual application of Chevron, I would respectfully refer to the Supreme Court's most recent decision in Torres versus Lynch which is the 2016 136 Supreme Court 1619 which was issued well after briefing in this manner. I think it's reasonable to conclude that Chevron's application is essentially in flux in light of de novo review in that case. My support for that is because Torres would have seemed otherwise to be a prototypical Chevron case where the board issued a published decision on interpretation of a statute with potentially ambiguous statutes therein. Not only did the court fail to mention Chevron throughout the entire opinion, the court acknowledged that part of it was ambiguous. It essentially treated the case as a de novo review and seemed to be essentially ignoring the deference issues and which puts my point is that I think that Chevron's application is a little bit in flux at this point. In any event, I think de novo review is improper is proper for this case because of what I just alluded to in the beginning that both of the equities placed them behind the statutory purpose of 1229B. Now assuming for argument's sake these cases do not invoke de novo review and we have to refer back to the Chevron analysis, the government here argues for the analysis to end under 1101B1 based on the statutory definition of child. Now obviously I can't dispute the existence of this language as this court recognized in Montero-Martinez all the way back in 2002. But I would submit that these two petitions differ from Montero-Martinez where the NTA was issued in both of their cases and both of them did possess the requisite time and did possess the requisite qualifying relative. Are you arguing about the statutory definition of the time of the adjudication? I understand. It's a very understandable question. I can't dispute the existence of the definition of child. So you don't argue that that's ambiguous? No, I think I would be a fool to do that. However, I do think that the reading and the government's reading cannot be harmonized with due process. And as that is my point in that situation and I can't think that it can be harmonized with the general purpose of the statute. Are you saying that the statute, the statutory definition of child might, that statute might be unconstitutional? Absolutely. As violating due process, so it's a constitutional argument? Absolutely. Yes, Your Honor. And so why is the statutory definition of child unconstitutional? It's unconstitutional because when we're looking at the settled expectation, I think it has to be read in a greater context of the cancellation statute. As I stated, the general purpose is to provide a statutory break to aliens otherwise that would qualify in an otherwise harsh effect. And they are given this situation where they have a settled expectation coming in that they can apply for this statute. And they can have the ability to have their decision heard, to have their application heard. And when the definition of child is harshly applied within 1229 B, that affects the settled expectation that they had when they entered into proceedings. So the settled expectation, because the cancellation of removal statute didn't change. That was one of my concerns with your reliance on St. Cyr. So the statute didn't change. And the statute itself read together with the definition of child as a qualifying relative as a child, meaning someone who's under 21. So unless he had an expectation that his child wouldn't get any older, how did he have a settled expectation that would be relevant here? I think he could have had a settled. So if we're gonna, I think a good way to look at this would be to look at the facts of the Isidro Zamorano case. The board found is relevant. The one year before the NTA was issued, that person had obtained the 10 years. And there was one year from the time the NTA was issued to the time that the application was decided. I think that that comports with due process, with due respect. What I do not think comports with due process is the factual basis in both of these cases. The NTA was issued in both of these cases, and we had five and seven years from the time that the NTA was issued to the time the application was adjudicated. That is where the settled expectation is. And that's where the crux of our argument comes in. For Mr. Mendez-Garcia, there was no appellate delay whatsoever. It's just a matter of course. And during this time, they aged out. And that's where the settled expectation of being able to apply and having the due process concerns of being able to fully present your case. The way that that was applied to them is what affected the settled expectation. And I think it's important to note there's a difference when we're looking at the proprietary interests that the government cites in their briefs of being granted relief. It's not that we're arguing that they had a right to be granted relief. That's not what we're what's being argued. What we're arguing is that they had the right to have this case adjudicated within a reasonable amount of time. One year, as in Cedro Zamorano, I think is a reasonable amount of time. Five and seven years is not. And these the case came back on remand in Mr. Rivera-Baltazar, he had to have known that there was X amount of time left. And he's essentially left there to twist in the wind. And it's read in that greater context where I find the definition of child to be too restrictive when we're looking at the general purpose behind 1229B. I couldn't tell from the record, but did your client attempt to speed the process along the hearings and try to eliminate some of the delay? I think either there's different cases. So for Mr. Rivera-Baltazar, I think first we have to start with looking at what the immigration judge did. Through a retroactive application of the statute, the immigration judge essentially the actions of denying for that disqualifying statute chewed up six years or five or six years of the qualifying relatives under 21 years. My point is that the retroactive analysis at that point, which eventually the government in so many words conceded by allowing a remand finally, it wasn't a new issue. St. Cyr, which had discussed retroactive application, was something that was in effect well before that even went up. And my point is, is that that unfairly chews up time at that point. So in that case, he had been denied cancellation of removal based on the 1996 domestic violence conviction. And then the BIA decided matter of Gonzalo Silva. And so there was reconsideration based on that. Is that right? Well, it was denied. It was denied initially by the immigration judge. It was affirmed by the Board of Immigration of Appeals. We tried to do a motion to reopen. That was denied. It went all the way back up to this court. And then when it came time essentially for a decision, the government moves to remand the case, which obviously we're going to we're going to go along with. But the point is, is that the clock is running at this time. I don't know the names that go with the facts, but in the one case, the BIA, after it got the case back from our court, sat on it for three years. Absolutely. Well, but if I remember right, your client didn't do anything in that intervening three years to speed things along, as Judge Ikuda suggested, until basically the very end of that period, at which point, I don't know if it was your client or the government, but somebody said to the BIA, hey, what's going on? And within I think 20, 22 days or so after whatever that motion was, the BIA remanded it back to the IJ. So why wouldn't we say to your client in that situation, maybe you had some kind of a due process right, not for this case, not to just, you know, stay in limbo forever. But boy, you really didn't do very much to, you know, try to prompt the agency to act more quickly. That's a fair question, Your Honor. The only thing I can say is, and I lopped the board and the immigration judge together in these kinds of situations, and I look at the actual immigration judge's final decision, where he had to have known that there was three months left. In theory, that's a fantastic idea in terms of doing something. That's not to excuse my client not having done anything. In practice, it does nothing. You know, in practice, essentially, whatever effort is made is done nothing. And I understand that it was remanded, you know, at that point. But the simple point is, is it was it was three years, and this was on a government motion to remand, and there's no reason for it not to have been sent back. No, I agree. But I'm just, I guess what I'm wondering out loud is, you know, is your client's case here the right one for us to announce some new due process limit on how long the agency can take in these kinds of cases when, at least in that one instance, as I'm... If Mr. Rivera-Baltazar's case is not Mr. Mendez-Garcia's case is. Okay, so what happened in that case? There was no appellate delay in that. There was no appellate delay whatsoever. There was no misapplication of the facts. It's just this was the course. No, no, I know. But if I remember in that case, though, there was a three or four year delay at the IJ level, right? What did your client do in that context? The only thing that we can do in those proceedings is, is note the dates, you know, in terms of the application. It's not like this is a secret, you know, in terms of knowing when these children are aging out. This is not a secret to anybody. And having practiced before the immigration courts now for close to 13 years, you're at the mercy of when they, when they set these, these, these time limits and you kind of have to accept it. And you can essentially say, look, and we're going to, we're going to age out. And more often than not, the, the executive, the EOIR says, these are, these are the times that I have. And that's the way it is. And I think that that's what happened in both of these cases, to be honest with you. And I think Mr. Mendez-Garcia's case is particularly situational in that way, in terms of at the end of the close of proceedings, both of, all counsel, including the immigration judge had recognized, listen, this guy's about ready to age out. And then says to, to Mr. Hiltz, who was attorney of record at the time, you need to do something between now and the 12 days that, that it's supposed to, because I have to close for the cap. Well, what, what are we supposed to do? There's, there's no statutory relief from the cap to get at that point. And that's my point, is, is it sits there and it falls on deaf ears. I'm glad that the immigration judge pointed that out. But at the same time, there's, there's nothing that can be done. I mean, besides, it was already recognized that this was about to happen. And that's the problem, in terms of waiting the five years. And I think that that's the. Let me just, sorry to cut you off, but I, I'm not that familiar with how things work at the IJ level. So let's say that you file the, the application for cancellation at year, you're four years out, right? Correct. Four years before the child's going to age out. Year goes by, I don't know, what, what happens? I mean, there's a hearing set eventually, right? So there is. So generally, it, it really depends. So generally, what will happen is, is you, you have your, you have your NTA. And this one, they were in the, they were, they were in Arizona. There was a change of venue. You get the first master hearing. You do pleadings at the first master hearing. You get an indication of what kind of relief is going to be applied for. Then a next master hearing is set. If the attorney's on his game, he brings in the, the fully documented application. And the immigration judge at that point should set a master of merits hearing. And say, you know, anything else, you know, supplemental documents or whatnot, bring them in. It's just the course of the way that they went at this time. You know, be it through. So let me, let's, again, I don't know the names, but in the case where there was that years-long delay at the IJ level, did the, did your client file the application and then the IJ just said, hey, I'll set a hearing in four years, see you then? It was in four years. Sometimes they'll set intermediary status hearings, you know, in terms of, of ancillary issues, other chances of potential for relief where, for example, public PD that you want to, prosecutorial discretion that you want to seek with, with government, and they'll set it that way. The overriding concern, though, is, is that I don't think that it's a secret that any of them know this is about to happen. And referring back to my original argument, it's the ability to apply for the relief and ability to fully present their case and have their case adjudicated. That's the proprietary interest that we're looking at at that point. And I see that- We're actually out of time, but we'll give you a minute for rebuttal. Thank you, Your Honor. We'll hear from the government. Good morning. Jane Shoffner for the respondent. We submit that the purpose of cancellation of removal is absolutely to relieve hardship. But it's not to relieve hardship to the alien. It's to relieve hardship to their U.S. citizen and lawful permanent resident relatives. There was a previous form of relief called suspension of deportation that was designed to provide relief to the alien himself or herself. That alien had to show extreme hardship to himself to qualify for the relief. But Congress saw fit to change the statute and act a new form of relief, cancellation of removal, and that is designed to benefit the relatives, the USC relatives who would suffer- the U.S. citizen and lawful permanent resident relatives who would suffer exceptional and extremely unusual hardship if their relative were removed. To- I feel a little bit at a disadvantage this morning because some of the arguments I'm hearing for the first time today, which make it a little difficult for me to respond- for example, the agency did not have an opportunity to consider petitioner's argument that the rule- the age-out rule should apply at the time the NTA is filed. That was not an argument presented to the agency. But in any event, the agency has issued a precedent decision which we urge the court to afford Chevron deference to, finding that the statute clearly provides that the alien must establish this hardship to the spouse, parent, or child who is a U.S. citizen or lawful permanent resident, and that child is defined as an unmarried person under the age of 21. In the Rivera case, just as a matter of factual clarification, we absolutely acknowledge that there was a three-year delay after the court- this court remanded the case to the board. But it was not petitioner who noted that delay. It was actually DHS who filed a motion to ask the board to render a decision. That motion is at page 228 of the record. In response, petitioner actually asked for an extension of time. That's at 205 of the record. Everyone was aware, should have been aware, that the clock was ticking. Petitioner sat on his rights by doing nothing for three years and then asking for an extension of time. Let me just get- let's put aside the Chevron deference question for a second. I know you have more to say about that. But on the due process question, I just wanted to be clear on what the government's position is. Are you saying that there is no due process interest in the amount of time it takes the agency to act on a cancellation application just whatsoever? Or are you just saying that in these cases, either the time wasn't long enough or the petitioner didn't do enough to sort of activate that right? We're definitely saying in these cases that the aliens sat on their rights. And I'll tell you about Mark Mendez Garcia, what he did and did not do as well. As a threshold matter, we'd say that although there's a fundamental right to a full and fair hearing, there's no constitutionally protected due process interest in a wholly discretionary form of relief. Right. That's what I was wondering if you were going to say. So you would take the position, let's say that the delay were 10 years. The person filed when the child was 11 and literally every month from that point until the child aged out, the petitioner was kicking and screaming, demanding that some action be taken. And the agency just, for whatever reason, turned a deaf ear to to those requests. Then finally, when a merits hearing is held, it's you know, the child is now 21 days and one years old or whatever. And the IJ would say, no, sorry, you're you're ineligible. Go see the procedural decision. You would say that there is just no due process right that can be asserted at all in that scenario. I definitely acknowledge that's a that's a problematic scenario. And I, I would hope that would not occur. I can tell you, though, that there's a remedy if that were to occur. And it's a remedy available in these cases as well. That is the cancellation statute is designed to benefit really families with children, persons under the age of 21 once. And there are only 4000 grants of application available per fiscal year. So it's a it's a relatively small pool of people who might qualify. So as a matter of allocating resources. Once an individual, an individual qualifying relative USC relative turns 21, that person can file an application for adjustment of status on behalf of their relative. So a grant of cancellation of removal results in adjustment of status. If if the qualifying relative ages out. They're not eligible for adjustment through cancellation, but they're eligible for adjustment through their now 21 year old relative who can file a visa petition on their behalf. That's also a very lengthy process, though, isn't it? That is a very lengthy process or can be. Well, let me take that back. For. Individuals who have children who are U.S. citizens. That U.S. citizen is called an immediate relative, so there is no long wait for a visa to become available, as there are in other cases where you are trying to immigrate through another family member. Once that application is processed, a visa is immediately available. Adjustment is available in in neither of these cases. Is there any indication that these young men who are now adults in their in their mid 20s have filed petitions on behalf of of their fathers? As a practical matter for the delay in in the proceedings, I've seen maybe one or two cases where the the applicant wanted things speeded up in almost every other case. There is there. They're happy to stay in the country as a practical matter. How or in your experience, how do the IJ and the BIA react to a motion trying to speed things up? I mean, do would it be futile as as opposing counsel says? Is there do they have process or rules for responding to those sorts of motions? Yeah, I can tell you you're right. In most cases, the long delay generally works to the benefit of the alien. It's more time in the United States. In fact, part of the reason the board in matter of procedural crafted the rule that it did is because additional time generally accrues to the alien's benefit. They have more time to marry a U.S. citizen or lawful permanent resident, thereby acquiring a qualifying relative. It accounts for life circumstances. Perhaps someone has a serious disease that now qualifies as hardship. But, yes, there are opportunities to advance calendar hearings. I have I have seen in in my work transcripts that reflect an effort to move the calendar date forward. That didn't happen in Mendez Garcia. The other case, in fact, at the conclusion of the hearing, when the alien was just the alien's son was just 11 days away from from aging out. The immigration judge asked counsel to provide supplemental briefing on the age out question. And granted, matter of procedural had already been decided that at that point. But the immigration judge asked counsel if he wanted to address any argument relating to the fact that his his client's son was about to age out. He didn't file a supplemental brief of of any kind. And that's on page 181, 72. He said to the IJ, the only thing that he was concerned about is that his client had a piece of paper to walk around with in case he got caught by law enforcement. So even though it was 11 days away, counsel sat there, petitioner, sorry, sat on his rights. So can I just take you back to the question I posed to you a minute ago about the 10 year hypothetical? I didn't quite understand what your answer was to that. OK. So because we have to write an opinion, obviously, in this case where we need to write something to dispose of it. So what's the rule then that you would ask us to adopt? There's in my hypothetical you're out of luck. There's no due process limitation on the outside at all. Or rather, are you asking us just to decide on the particular facts of these two cases? The petitioners didn't do enough to assert their rights. What's where do you come down on that? Yeah, I think we would prefer that you say that these two didn't do enough. But in general, there is no protected liberty or property right and discretionary discretionary form of relief from removal. And that in any even if there were a due process violation, the alien is required to show prejudice. And as I mentioned earlier, there is no prejudice because there's an opportunity to apply for adjustment through the now 21 year old relatives. In these two cases in particular, there's also no adjust or sorry. There's no showing of prejudice because we don't really know what the hardship would have been to either of these. These two now 21 year old over 21 year old individuals. The Rivera case, there's simply no evidence of hardship whatsoever. And in Mendez Garcia, the evidence of hardship was that the son suffered from scoliosis when he was a child, but that it was better. That's a page 138 of the record. In fact, at the time of his 2013 hearing, he didn't even have a appointment for a follow up until 2016 this year. And so if the court were to determine that the agency's approach in matter of a CDO is not entitled to Chevron deference or that there was a due process violation and that prejudice occurred. Both of these cases would need to go back to the agency to decide whether the aliens established hardship, whether the aliens are persons of good moral character. Given their criminal histories, whether relief is warranted as a matter of discretion, again, because of their their criminal issues. Can I ask you this when your analysis of the due process violation? I'm just wondering if it was quite quite right when you were saying prejudice, isn't the prejudice simply that I was deprived of an opportunity to make the showing that you just mentioned would need to be made on remand? I wouldn't think that the petitioner would need to show that they would have obtained cancellation. Rather, they would just need to show, hey, as a result of this long delay, I was deprived even of the opportunity to sort of make the hardship showing the like. And so all I'm asking for as relief is just to be put back in the place I should have been, which is to have the IJ now hear the merits. And then it's a discretionary call. I mean, it's not up to our court or any right court to decide that. Well, actually, in Mendez Garcia, there was actually a full and fair hearing where the IJ took testimony on all of these issues, took testimony on. But right. But and then said, I think this is a borderline case suggesting I probably wouldn't even have granted relief even if I could. But all I'm saying is if if the IJ decision that is on review before us is just one that says, you know what? I'm not even going to address the merits because your child has aged out. You are now statutorily ineligible for relief. So that's the end of the the decision making process. It just seems to me the remedy, if there were a due process violation, would just be simply to say that, no, you were wrongfully deprived. You were wrongly deprived of the opportunity to have the IJ make a merits determination. We're just sending it back for that to happen. And maybe if it's a borderline case, the IJ says, OK, well, now I'm told that I do have the statutory authority to consider granting this relief. I'm going to die because your case isn't compelling enough. That that is certainly certainly one one remedy. Again, we we would hope that the court doesn't go that way because we believe that. The agency was acting in full accord with its own precedent when it determined that these folks didn't have qualifying relative. At the time, the IJ rendered the decision. And in fact, if I just might point out very quickly in Rivera, in the Rivera case. The alien did not even have a qualifying relative at the time his application was filed. His son was already over 21 by the time he filed his application for cancellation of removal. Can I ask you one quick question? There was a third case on our calendar, Lopez Morales. Do you know anything about that case? I know a little about that case. Do you? What was the arrangement that the government worked out with him such that he that this case didn't need to be argued? You know, I am not fully aware of the details. I understand, however, that there are discussions about prosecutorial discretion underway in in that case. I can assure the court in the few seconds that I reached out to DHS in both of these cases about prosecutorial discretion. And they declined to exercise prosecutorial discretion. They view both of these individuals as enforcement priorities based on their criminal convictions. So that was not an option in this case. Thank you. Thank you. You have a minute for rebuttal. After listening to counsel's argument regarding the basis or the purpose behind the cancellation statute. I do respectfully refer back to the Supreme Court's decision from Martinez Gutierrez, which says states one of the statute's objectives is to, quote, providing relief to aliens with strong ties in the United States and promoting family unity, which I again think puts the focus as well back on the alien as well in terms of as well as the qualifying relative. Counsel's argument as to Rivera that he had a child that had aged out when he was 21 already by the time the application was filed, isn't necessarily a full reading of the record from the onset of the matter. Mr. Rivera indicated that he was going to apply for cancellation or removal. The immigration judge looked at the conviction record and said that I'm preterminating any kind of application. So the actual filing the application at that point would have been superfluous because they then sent us through the rabbit hole of appeals and everything like that. And eventually when we get to the Ninth Circuit, this court, the government says, okay, well, we'll go ahead and remand it at that point. As to counsel's argument as adjustment of status, I can go by my experience here and says regardless of it being immediately available, it still is a process that takes time. But I think equally important is if we're to take counsel's construction here, cancellation is denied. Then we go to adjustment of status. Well, the problem with that is that cancellation has been denied. He's been ordered removed at this point. So he has an order of removal against him. And so it's at the government's discretion essentially to kick him out at that point if he wants to. It could potentially need a waiver, and it further lengthens the process. As to the continuing application that counsel referred to with Isidro Zamorano, I think that the sub salento language from PARTAP is something that says that to address these potentially changed circumstances from when the application was filed is a properly documented motion to reopen. Please wrap up. You're well over. And we submitted, Your Honor. Thank you. All right. The case of Mendez Garcia v. Lynch and Rivera Baltazar v. Lynch are submitted.
judges: Silverman, Ikuta, Watford